UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. BUSH,<br><br>    Plaintiff,<br><br>    v.<br><br>MONDELEZ INTERNATIONAL, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-02460-RS<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiff Anthony Bush avers that food manufacturer Mondelez International Inc. ("Mondelez") under-fills certain travel-size snack products. In his original and first amended complaints, Bush did not dispute that the snack product labels accurately disclose the number of cookies included in each container. Rather, he averred that the containers include empty space at the top, such that the container size misrepresents the volume of included snack. In his second amended complaint ("SAC"), Bush newly alleges that the product labels actually fail accurately to disclose the amount of snack within. The SAC's new allegations, however, still do not support a plausible claim for consumer deception, and Bush has not adequately pleaded any other violation of California's Unfair Competition Law. Mondelez's motion is thus granted.

## II. BACKGROUND

The allegations of the first amended complaint ("FAC") are described in detail in the October 7, 2016 order dismissing the FAC ("prior order" or "Order") and, to the extent they are essentially repeated in the SAC, they are not repeated here. This section focuses on the SAC's new allegations.

While Bush previously alleged he purchased six different varieties of travel-size snack

products within the last three years, he now alleges only making a one-time purchase of four products: Mini Oreo, Mini Chips Ahoy!, Golden Oreo Mini, and Nutter Butter Bites ("Go-Pak products"). He also newly alleges that Go-Pak products actually contain fewer cookies than listed on the product labels. In addition, he now clarifies that he brings claims under all three prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, which prohibits "unlawful, unfair or fraudulent business act[s]." He also brings claims for consumer deception under California's False Advertising Law, Cal. Bus. & Prof. Code 17500, and Consumer Legal Remedies Act, Cal. Civ. Code § 1750. Mondelez moves to dismiss the SAC on the grounds that: (i) Bush's consumer deception claims are implausible; (iii) his claims under the UCL "unlawful" prong are inadequately pleaded and preempted; (iii) his claims under the UCL "unfair" prong are inadequately pleaded; and (iv) all claims are pleaded without requisite particularity.[1]

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*. The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679. In alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex*

---

[1] Mondelez also argues that Bush lacks standing to challenge products he did not purchase, but the SAC seeks relief on behalf of consumers who purchased the same four products that Bush allegedly purchased. *See* SAC ¶¶ 1, 70.

*rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations and citations omitted).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## IV. DISCUSSION

### 1. Consumer Deception

The prior order explained in detail the deficiencies of Bush's consumer deception claim. In short, his claim that reasonable consumers are likely to be deceived by Go-Pak product packaging is implausible because Go-Pak product labels disclose the net weight and number of cookies per container and consumers expect there to be some slack-fill in opaque snack containers. *See Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *6 (9th Cir. Sept. 27, 2016) (deception claim based on oversized packaging was implausible where net weight label was affixed to every tube); *Hawkins v. UGI Corp.*, No. 14-08461, 2016 WL2595990 (C.D. Cal. May 4, 2016) ("regardless of consumers' inability to visually observe the level of product remaining in a cylinder . . . Plaintiffs here cannot plausibly allege that Defendants' admittedly accurate net weight labels [] are fraudulent, deceptive, or misleading"); *Fermin v. Pfizer*, No. 15-2133, 2016 WL 620891 (E.D.N.Y. Oct. 18, 2016) ("as a matter of law, it is not probable or ever possible that Pfizer's packaging could have misled a reasonable consumer" because "each of the packages in Plaintiffs' Complaint clearly display the total pill-count on the label").

Bush's new allegations do not alter this conclusion. He attempts to show that Go-Pak products "provided less food than the amount actually stated on the [label]," but his averments fall short. For example, he claims that "Golden Oreo Mini containers contain fewer than 32 cookies." SAC ¶ 36. This is not less than the amount stated on the label. The label lists a serving size of 9 cookies and about 3.5 servings per container, so consumers can expect to find approximately 31.5 cookies per container. The same is true for Oreo Minis. For Nutter Butter Bites, the labels represent that containers include "about" 35 cookies (with a net weight of 99 grams) and Bush alleges that they contain "fewer than 35 cookies." *Id.* ¶ 38. He does not allege the number of cookies actually included or the actual net weight of the included product. Nor does he allege when, where, and how he weighed or counted the cookies. *Id.* ¶ 7. For Mini Chips Ahoy! products, the labels represent that the containers include about 49 cookies (with a net weight of 99 grams) and Bush alleges that the containers include "fewer than 32 cookies." SAC ¶ 39. At the hearing, Bush conceded that this allegation is an error and that he intended to allege that Mini Chips Ahoy! products contain "fewer than 49 cookies." As with Nutter Butter Bites, Bush does not allege the actual number of included Mini Chips Ahoy! cookies, the actual net weight of the included product, or the manner in which he counted or weighed the cookies. He also does not explain why he implicitly acknowledged the accuracy of Go Pak Product labels in his prior complaints and briefing, *see, e.g.,* FAC ¶ 8, or why he failed to assert these new facts in his prior two complaints. At bottom, Bush's new factual allegations are either entirely immaterial or insufficiently particular under Rule 9(b), which is the applicable pleading standard for claims alleging consumer deception. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

In his opposition brief, Bush newly argues that the prior order conflicts with FDA guidance on 21 C.F.R. §100.100, the federal regulation prohibiting nonfunctional slack-fill in food products. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 F.R. 64123, 1993 WL 498605 (Dec. 6, 1993). Before finalizing that regulation, he argues, the FDA considered and rejected comments "that stated that net weight statements protect against misleading fill." *Id.* at 64128. It found "that

the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading." *Id*. Bush admits this is a new argument that he could have made earlier in support of his FAC. *See* Opp. at 9 ("the prior order does not take cognizance of [Bush's new argument] because it was not provided in Plaintiff's prior briefing"). This argument could thus be rejected as waived.

In any event, the FDA guidance document is not binding authority for purposes of Bush's consumer deception claims. Those claims are brought under California consumer protection laws. Courts, not the FDA, determine whether a product is misleading under those laws. In *Ebner*, the Ninth Circuit decided that a manufacturer's alleged oversized packaging for a lip balm product was not deceptive under the reasonable consumer test and, thus, did not violate the same consumer protection laws at issue here. There, the district court granted the defendant's motion to dismiss, noting that "Plaintiff points to no cases in which such packaging, when paired with an accurate net quantity label, . . . constituted deceptive marketing practices." No. 13-00477, 2013 WL 9760035, at *7 (C.D. Cal. Sept. 11, 2013). The Ninth Circuit affirmed. 2016 WL 5389307, at *6.[2] Though *Ebner* involved a cosmetic product and 21 C.F.R. §100.100 governs food products, nothing in the decision suggests that the Ninth Circuit's application of the reasonable consumer test under state consumer protection laws would have been different in the context of food, or that the court was influenced by, or even considered, the existence of any FDA regulations (or the lack thereof).

**2. Unlawful Packaging**

In the SAC, Bush again asserts a claim under the "unlawful" prong of the UCL. He avers his claim is based on violations of California's Sherman Food, Drug, and Cosmetic Act

---

[2] The prior order distinguished *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008), which "stands for the proposition that, if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 2016 WL 5389307 at *5. It found that here, like in *Ebner* and unlike in *Williams*, there is no deceptive act to be dispelled. Order at 6. Bush argues for the first time in his opposition brief that the size of the packing itself is a deceptive act. Yet, in *Ebner*, the plaintiff similarly alleged that oversized packaging was deceptive and the Ninth Circuit nevertheless found "the weight label does not contradict other representations or inferences on [defendant's] packaging." *Id.* at *6.

("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, and cites the provisions of the Sherman Law that incorporate by reference the nutrition labeling requirements of the federal Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 343(q). *See* SAC ¶ 88 (citing Cal. Health & Safety Code § 110665). Bush does not, however, aver with specificity any particular FDCA requirement which he claims Mondelez violated. His claim is thus inadequately pleaded.[3]

To the extent Bush intended to allege a violation of the Sherman Law based on 21 C.F.R. § 100.100, his allegations continue to be insufficient. That regulation provides that a food is misbranded if it contains "nonfunctional slack-fill," which is defined as "empty space in a package that is filled to less than its capacity" for reasons other than: (1) protection of contents; (2) the requirements of the machines used for enclosing the package; (3) unavoidable product settling; (4) the need for the package to perform a specific function; (5) the fact that the product consists of a food packaged in a reusable container where the container is part of the presentation and has value; or (6) inability to increase level of fill or to further reduce the size of the package. 21 C.F.R. § 100.100(a)(1)-(6). Bush alleges that Go-Pak slack-fill serves none of these functionalities. SAC ¶¶ 12-32. Yet, his allegations continue to be entirely conclusory; he has not amended them in any meaningful way. *See* Order at 7 (citing *Victor v. R.C. Bigelow, Inc.*, No. 13-02976, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014)); *see also Bautista v. Cytosport Inc.*, 15-CV-9081-CS (S.D.N.Y. Dec. 13, 2016) ("a plaintiff must possess *some* factual basis before bringing a [nonfunctional slack fill claim]"). Moreover, some of his allegations are illogical and implausible. For example, Bush alleges that "any slack-fill present in the Products' container is not a result of the cookies settling during shipping and handling," SAC ¶ 21, but the "settling" of contents "is a normal, unavoidable process for many types of food (e.g., cereal and potato chips)."

---

[3] Mondelez also argues that Bush's claims are preempted by the FDCA. Federal law prohibits state food labeling requirements that are not identical to federal requirements, but the FDCA and Sherman law contain identical prohibitions on false or misleading labeling. *See* Cal. Health & Safety Code § 110100(a). Because Bush's claim is inadequately pleaded, it is difficult to assess whether Bush seeks to impose a slack-fill requirement separate and apart from 21 C.F.R. § 100.100. Assuming his claim is based merely on a violation of that regulation, his claim is not preempted. *See, e.g., Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010) ("plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are . . . identical to those imposed by the FDCA").

58 Fed. Reg. 2957-01, 2961, 1993 WL 1564 (Jan. 6, 1993).  In the SAC, Bush adds no factual allegation about how Go-Pak packaging is unlawful aside from conclusory statements that do not suffice for either Rule 8's "plausibility" standard or Rule 9's "particularity" standard for pleading.[4]

### 3. "Unfair" Conduct

Bush now asserts that Mondelez violated the UCL's "unfair" prong.  The proper definition of "unfair" conduct against consumers "is currently in flux" among California courts.  *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014).  Some courts apply a balancing approach, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others have held that "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 735 (9th Cir. 2007).[5]  Bush's claim fails under both tests.  First, his claim fails under the balancing test because, as discussed above, he alleges no plausible claim of consumer deception.  Second, his claim fails under the public policy test because, as discussed above, Bush fails adequately to plead any specific statutory violation.  He also does not otherwise connect Mondelez's conduct with a violation of a legislatively declared policy.  Moreover, to the extent he intended to tether his claim to the policy of protecting against consumer deception, his claim fails for the same reasons it fails the balancing test.  In sum, his allegations do not comply with Rule 8 or 9.

---

[4] Rule 9(b)'s particularity requirement applies to each of the three prongs of the UCL where, as here, the claims are based on a "unified course of fraudulent conduct." *Kearns*, 567 F.3d at 1126–27.  Bush's "unlawful" and "unfair" claims appear to relate to 21 C.F.R. 100.100, which protects consumers against "misbranding," specifically "misleading containers."  Other courts in this district have "rejected the notion that 'misbranding' under the 'unlawful' prong of the UCL excuses a plaintiff's obligation to plead fraud with particularity." *Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004 (N.D. Cal. May 6, 2015) (citing cases).

[5] There is a third test, which borrows from section 5 of the Federal Trade Commission Act, finding "unfair" business practices where (1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury.  *See Camacho v. Auto. Club of S. Cal*., 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006).  This test does not apply in consumer cases, and therefore is inapplicable here.  *Lozano*, 504 F.3d at 736 ("Though the California Supreme Court did reference FTC's section 5 as a source of 'guidance,' that discussion clearly revolves around anti-competitive conduct, rather than anti-consumer conduct." (internal alteration omitted)).

## V. CONCLUSION

For the foregoing reasons, Mondelez's motion is granted and Bush's claims are dismissed without leave to amend. Given that Bush failed to cure the previously identified pleading deficiencies on his third attempt to state a claim, leave to amend appears futile and thus is not granted.

**IT IS SO ORDERED**.

Dated: December 16, 2016

RICHARD SEEBORG
United States District Judge